*781 Opinion
BROWN, J.
In this case we address the mens rea for felony child abuse involving indirect infliction of harm. (Pen. Code, § 273a, subd. (a).)[1] Consistent with a long line of decisional authority, the jury was instructed that felony child endangerment could be committed if defendant Eva Valdez acted with criminal negligence. However, the Court of Appeal interpreted the statute differently, concluding a defendant must purposefully place the child in a hazardous situation, while possessing a subjective awareness of this risk. It therefore reversed defendant’s conviction. We reaffirm criminal negligence is the appropriate standard, and therefore reverse the judgment of the Court of Appeal.
I. Factual and Procedural Background
On May 17, 1997, Thalia Escoto, the 11-month-old daughter of defendant Eva Valdez, died as the result of a brutal beating and shaking inflicted by defendant’s live-in flaneé, Hiram Lebrón. For the first eight months of her life, Thalia received regular medical care and suffered no unusual injuries. By all accounts, including Lebrón’s testimony, defendant never mistreated her children.
In February 1997, Lebrón moved in with defendant, Thalia, and defendant’s two other children. On or about February 8, 1997, Lebrón offered to care for the children while defendant worked. When defendant returned from work, Thalia was screaming and was seriously burned on her left buttocks and side; the bum had a circular shape. Lebrón told defendant the bum occurred while Thalia was momentarily left in a sink and the water became too hot. In April 1997, Thalia’s arm broke when Lebrón attempted to pull her from defendant’s arms; defendant heard a popping sound. Defendant testified the injury could have also occurred while she was attempting to pull Thalia’s arm from her car seat strap; she told friends she did not know how the injury happened. Later in April or in early May, Thalia received a black eye while in Lebrón’s care. He told defendant Thalia slipped and hit her head in the bathtub. The injury was so noticeable that when defendant went to pick up food stamps, the person helping her spoke to the police. Defendant, continued to leave Thalia in Lebrón’s care. At some point Lebrón also “yell[ed] in the baby’s face” because Thalia was crying, and put his fist through a wall dining an argument with defendant. Defendant told a friend that she was afraid because Lebrón scared her children and that she was thinking of leaving him. She also told a friend she was afraid of Lebrón’s temper. Defendant was counseled by friends that too many accidents were happening for her to safely entrust Thalia to Lebrón.
*782 On May 17, 1997, Thalia died from severe beating and shaking injuries that occurred while she was in Lebrón’s care. Lebrón told emergency room personnel Thalia had fallen from a bed. Medical testimony established that by the time of her death, Thalia had old injuries, such as a split upper and lower frenulum, perhaps resulting from a bottle or other object being forced into her mouth.
Defendant and Lebrón were tried together with separate juries. Defendant testified, and while conceding she was at work at the time the fatal injuries occurred, attempted to provide exculpatory explanations for how Thalia had been injured. These explanations were inconsistent with the timing and severity of the injuries, which included skull fractures and massive internal bleeding.
Lebrón was found guilty of assault resulting in the death of a child under eight (§ 273ab), and involuntary manslaughter (§ 192). Defendant was found guilty of felony child endangerment. (§ 273a, subd. (a).) The jury also found true the allegation defendant willfully caused or permitted Thalia to be injured or harmed, and the injury or harm resulted in death. (§ 12022.95.) Defendant was sentenced to two years in prison for violation of section 273a, subdivision (a), and to four years for the enhancement.[2]
The Court of Appeal reversed defendant’s conviction. The court concluded the “mental state element for section 273a(a) felony willful endangerment is purposefully or intentionally causing or permitting a child to be placed in a situation where the child’s person or health is seriously endangered; given this required purpose or intent, the accused must subjectively know or be aware of the danger. There is no ‘criminal negligence’ mental state element in section 273a.” (Fn. omitted.)
We granted the Attorney General’s petition for review.
II. Discussion
A. Background
Section 20 provides, “In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence.” (See also § 26, class Five [persons incapable of committing crime include those “who committed the act or made the omission charged through misfortune or by *783 accident, when it appears that there was no evil design, intention, or culpable negligence”].)
Criminal negligence is “ ‘aggravated, culpable, gross, or reckless . . . conduct. . . [that is] such a departure from what would be the conduct of an ordinarily prudent or careful [person] under the same circumstances as to be incompatible with a proper regard for human life . . . .’ ” (People v. Penny (1955) 44 Cal.2d 861, 879 [285 P.2d 926] (Penny).) “Under the criminal negligence standard, knowledge of the risk is determined by an objective test: ‘[I]f a reasonable person in defendant’s position would have been aware of the risk involved, then defendant is presumed to have had such an awareness.’ ” (Williams v. Garcetti (1993) 5 Cal.4th 561, 574 [20 Cal.Rptr.2d 341, 853 P.2d 507], italics omitted [further stating “there can be no criminal negligence without actual or constructive knowledge of the risk”]; Walker v. Superior Court (1988) 47 Cal.3d 112, 136 [253 Cal.Rptr. 1, 763 P.2d &52](Walker) [“criminal negligence must be evaluated objectively”].) Under section 20, criminal negligence “may be sufficient to make an act a criminal offense, without a criminal intent.” (1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Elements, § 20, p. 225.)
Section 273a, subdivision (a) “is an omnibus statute that proscribes essentially four branches of conduct.” (People v. Sargent (1999) 19 Cal.4th 1206, 1215 [81 Cal.Rptr.2d 835, 970 P.2d 409] (Sargent).) As relevant here, it provides: “Any person who, under circumstances or conditions likely to produce great bodily harm or death, [1] willfully causes or permits any child to suffer, or [2] inflicts thereon unjustifiable physical pain or mental suffering, or [3] having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or [4] willfully causes or permits that child to be placed in a situation where his or her person or health is endangered, shall be punished by imprisonment in a county jail not exceeding one year, or in the state prison for two, four, or six years.”[3] (§ 273a, subd. (a).)
*784 Violation of section 273a, subdivision (a) “ ‘can occur in a wide variety of situations: the definition broadly includes both active and passive conduct, i.e., child abuse by direct assault and child endangering by extreme neglect.’ (People v. Smith (1984) 35 Cal.3d 798, 806 [201 Cal.Rptr. 311, 678 P.2d 886].) . . . Section 273a[, subdivision (a)] is ‘intended to protect a child from an abusive situation in which the probability of serious injury is great.’ (People v. Jaramillo (1979) 98 Cal.App.3d 830, 835 [159 Cal.Rptr. 771].) ‘[T]here is no requirement that the actual result be great bodily injury.’ (Ibid.)” (Sargent, supra, 19 Cal.4th at pp. 1215-1216.)
In People v. Peabody (1975) 46 Cal.App.3d 43 [119 Cal.Rptr. 780], the defendant’s four-month-old infant suffered multiple nonaccidental fractures. (Id. at pp. 45-46.) There was no evidence that the defendant, as opposed to the baby’s father, had inflicted the injuries. (Id. at p. 46.) Thus, “the conviction can stand only under that portion of the statute which proscribes á person from wilfully causing or permitting a child to be placed in a health endangering situation under circumstances likely to produce great bodily harm or death.” {Ibid., italics omitted.) The court held that under these circumstances, section 273a, former subdivision (1) (now subdivision (a)) “requires proof of criminal negligence.” (Peabody, at p. 48.)
Since Peabody, numerous cases involving indirect abuse have interpreted section 273a, subdivision (a) as imposing a criminal negligence requirement. (See, e.g., People v. Kinkead (2000) 80 Cal.App.4th 1113, 1116-1117, 1119-1121 [96 Cal.Rptr.2d 121] (Kinkead) [the defendant fell asleep next to his three-year-old daughter, after ingesting methamphetamine, marijuana, and alcohol and being up for days, and asphyxiated her]; People v. Toney (1999) 76 Cal.App.4th 618, 620-622 [90 Cal.Rptr.2d 578] [child living in home where three-gallon pail of a caustic chemical that could melt the skin on contact was on kitchen floor and there were other hazards]; People v. Hansen (1997) 59 Cal.App.4th 473, 476-478,481-482 [68 Cal.Rptr.2d 897] [34-year-old man encouraged 14-year-old neighbor to play fatal game of Russian roulette]; People v. Deskin (1992) 10 Cal.App.4th 1397, 1399, 1402-1403 [13 Cal.Rptr.2d 391] [unspecified misdemeanor child endangerment]; People v. Lee (1991) 234 Cal.App.3d 1214, 1217-1218, 1221 [286 Cal.Rptr. 117] [mother convicted of second degree murder and felony child endangerment for death of emaciated and dehydrated infant]; People v. Rippberger (1991) 231 Cal.App.3d 1667, 1673, 1682 [283 Cal.Rptr. 111] [failure to seek medical treatment for child suffering from meningitis]; People v. Odom (1991) 226 Cal.App.3d 1028, 1031, 1032 [277 Cal.Rptr. *785 265] [children living in squalor and surrounded by highly dangerous drug lab and weapons]; People v. Pointer (1984) 151 Cal.App.3d 1128, 1131-1134 [199 Cal.Rptr. 357] [failure to provide proper nutrition and medical care]; Cline v. Superior Court (1982) 135 Cal.App.3d 943, 945-946, 948-949 [185 Cal.Rptr. 787] [father endangered toddler by throwing him in a car driven by another and then encouraging or knowingly permitting dangerous ride].)
This court has consistently embraced the criminal negligence standard set forth in Peabody and its progeny. Thus, in Walker, supra, 47 Cal.3d at page 135, we did not dispute the defendant’s statement that section 273a requires criminal negligence, and we applied that standard in detail throughout our opinion. In so doing, we rejected the defendant’s claim that her sincere concern and good faith in using prayer to treat her four-year-old daughter’s ultimately fatal meningitis was a viable defense to a charge under section 273a, subdivision (a). We stated, “criminal negligence must be evaluated objectively. . . . flQ . . . The relevant inquiry, then, turns not on defendant’s subjective intent to heal her daughter but on the objective reasonableness of her course of conduct.” (Walker, at pp. 136-137, fn. omitted.) “When divorced of her subjective intent, the alleged conduct of defendant here is essentially indistinguishable” from another case in which a parent was convicted of involuntary manslaughter and felony child endangerment when her child died for want of medical care. (Id. at p. 137.) “[W]e reject the proposition that the provision of prayer alone to a seriously ill child cannot constitute criminal negligence as a matter of law.” (Id. at p. 138.)
 In People v. Heitzman (1994) 9 Cal.4th 189, 204-205 [37 Cal.Rptr.2d 236, 886 P.2d 1229] (Heitzman), which interpreted section 368,[4] a section patterned on and virtually identical to section 273a, subdivision (a), we addressed the class of persons who, in addition to caretakers and custodians, had a duty to prevent elder abuse. As pertinent here we noted, “by reading into section 368[, subdivision] (a) the requirement of criminal *786 negligence, the standard of conduct required by the statute can be made sufficiently certain. The requirement of criminal negligence . . . however, . . . simply clarifies the standard by which to determine whether the duty to prevent elder abuse, once established, has been breached.” (Heitzman, at p. 208, italics & fn. omitted.) “[T]he interpretation we give to the statute is not only fully consistent with, but an integral component of, the judicially imposed requirement that liability under section 368[] may only arise when the defendant’s conduct is found to be criminally negligent.” (Heitzman, at p. 213, fn. 20.) As alluded to in Heitzman, the Courts of Appeal have interpreted section 368 to contain a criminal negligence mens rea. (People v. Monis (1992) 10 Cal.App.4th 110, 114 [12 Cal.Rptr.2d 619] (Monis), disapproved of on other grounds in Heitzman, supra, 9 Cal.4th at pp. 208, fn. 16, 209, fn. 17; People v. Superior Court (Holvey) (1988) 205 Cal.App.3d 51, 60 [252 Cal.Rptr. 335] (Holvey), disapproved of on other grounds in Heitzman, supra, 9 Cal.4th at p. 209, fn. 17 [statute does not require specific intent, but proof of criminal negligence]; see People v. McKelvey (1991) 230 Cal.App.3d 399, 405 [281 Cal.Rptr. 359] (McKelvey) [sufficient evidence supports trial court’s implied finding that the defendant’s conduct was criminally negligent].)
In Sargent, supra, 19 Cal.4th 1206, we addressed the mens rea for a conviction of felony child abuse where direct infliction of unjustifiable physical pain and mental suffering was alleged. (§ 273a, former subd. (1), now subd. (a).) In Sargent, the defendant had violently shaken his infant son, resulting in the child’s near death. We concluded direct infliction of unjustifiable physical pain or mental suffering, which in the context of violent shaking was essentially a battery, was a general intent crime. {Sargent, supra, 19 Cal.4th at pp. 1219-1220, 1224.) We noted the “actus reus for [former] section 273a[, subdivision] (1) is infliction of unjustifiable physical pain or mental suffering on a child,” and that the “scienter for any crime is inextricably linked to the proscribed act or omission.” (Sargent, at p. 1222.) Hence, the mens rea for the crime was the intent to perform the underlying injurious act on a child. Whether the infliction of such harm was also “under circumstances or conditions likely to produce great bodily harm or death” was a question for the trier of fact to determine. (Id. at p. 1224.) This latter measure of the defendant’s culpability was extrinsic to the intent element of the crime. (Id. at p. 1223 [“The actor may neither anticipate nor have any particular intent or knowledge with respect to [this] extrinsic matter[]”].)
Sargent expressly left open the question of the appropriate mens rea for indirect infliction of harm on the child, the issue in this case. (Sargent, supra, 19 Cal.4th at p. 1216, fn. 5.) However, it noted numerous Court of Appeal decisions had held indirect abuse under other prongs of section 273a occurs *787 when the relevant act or omission amounts to criminal negligence. (Sargent, at pp. 1218-1219.) Sargent distinguished the direct infliction of physical harm at issue in that case from the criminal negligence standard in Peabody and its progeny.
Specifically, Sargent relied on the similarity of the “inflicts” language in section 273a, subdivision (a) to that of section 273d, which proscribes corporal punishment or child beating, and had been interpreted as a general intent crime. (Sargent, supra, 19 Cal.4th at p. 1219.) “Furthermore, battery (§ 242), which requires general criminal intent, is a lesser included offense of section 273d.” (Sargent, at p. 1220.) We also noted that “[t]he similarities between felony child abuse involving direct infliction of unjustifiable physical pain or mental suffering and assault (§ 240) and assault with a deadly weapon (§ 245) also support the application of general criminal intent to section 273a(l). {People v. Smith, supra, 35 Cal.3d at p. 807 [‘The elements of section 245 and the offense here [violation of section 273a(1)] are strikingly similar; the principal difference is that the assault prohibited by section 273a is committed on a child.’ (Fn. omitted.)].) Assault and assault with a deadly weapon are general intent crimes. (People v. Colantuono (1994) 7 Cal.4th 206, 214-215, 218, 219, 221 [26 Cal.Rptr.2d 908, 865 P.2d 704].)” (Sargent, at p. 1220.) Finally, we noted that section 273ab, “which proscribes assault resulting in a child’s death, expressly refers to assault ‘by means of force that to a reasonable person would be likely to produce great bodily injury . . . .’ (Italics added.) Thus, when the Legislature chooses to create a reasonable person standard, it knows how to do so.” (Sargent, at p. 1220.)
B. Analysis
We now consider the appropriate mens rea for section 273a, subdivision (a) felony child endangerment. As noted, the Court of Appeal departed from existing law and held that defendant must have a subjective awareness that her act or omission involved a risk of serious physical danger or a health hazard. Defendant agrees with the Court of Appeal, and urges us to conclude there is no criminal negligence component to felony child endangerment. The Attorney General asserts that criminal negligence satisfies the mens rea element of the statute.
We begin with the language of the statute. As noted, we are in particular addressing the language in the fourth prong of section 273a, subdivision (a): “willfully causes or permits that child to be placed in a situation where his or her person or health is endangered.”
“The word ‘willfully,’ when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, *788 or make the omission referred to. It does not require any intent to violate [the] law, or to injure another, or to acquire any advantage.” (§ 7, subd. 1.) “We have observed that the meaning of the term ‘willfully’ varies depending on the statutory context.” (People v. Garcia (2001) 25 Cal.4th 744, 753 [107 Cal.Rptr.2d 355, 23 P.3d 590] (Garcia); id. at p. 752 [“willful[]” failure to register as a sex offender requires actual knowledge of duty to register].)
As construed to contain a criminal negligence requirement, section 273a, subdivision (a) sets forth a standard of conduct that is rigorous. Ordinary negligence will not suffice. Specifically, criminal negligence involves “ ‘a higher degree of negligence than is required to establish negligent default on a mere civil issue. The negligence must be aggravated, culpable, gross, or reckless, that is, the conduct of the accused must be such a departure from what would be the conduct of an ordinarily prudent or careful [person] under the same circumstances as to be incompatible with a proper regard for human life ... or an indifference to consequences.’ ” (Penny, supra, 44 Cal.2d at p. 879.)
Moreover, for 25 years, the lower courts have identified criminal negligence as the relevant standard of culpability for section 273a, subdivision (a) felony child endangerment, and this court has applied that same standard. (Walker, supra, 47 Cal.3d at pp. 135-138.) In addition, section 368, which the Legislature based almost verbatim on section 273a, has likewise been interpreted in this manner. (Heitzman, supra, 9 Cal.4th at pp. 208, 213, fn. 20; Monis, supra, 10 Cal.App.4th at p. 114; Holvey, supra, 205 Cal.App.3d at p. 60; see McKelvey, supra, 230 Cal.App.3d at p. 405.) Absent any intervening change in the relevant statutory language, this weight of consistent authority is persuasive.
Indeed, in 1993, section 273a was amended by Assembly Bill No. 897 (1993-1994 Reg. Sess.) to add an enhancement if the conduct or omission resulted in the child’s death. (Stats. 1993, ch. 1253, § 1, p. 7276.) This enhancement contained language similar to that in section 273a, and was subsequently moved to what is now section 12022.95.[5] (Stats. 1994, ch. 1263, §§ 3, 6, pp. 7936, 7941.) The legislative history of the 1993 amendment identified a “key issue[]” to be addressed as whether “criminally *789 negligent child abuse resulting in the death of a child [should] be punished by” a particular prison term, later amended to become a four-year enhancement. (Sen. Com. on Judiciary, analysis of Assem. Bill No. 897 (1993-1994 Reg. Sess.) as amended Apr. 28, 1993, p. 1; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 897 (1993-1994 Reg. Sess.) as amended Aug. 26, 1993, p. 1.) The “purpose of this bill is to increase the penalties for causing the death of a child through either negligence or corporal injury.” (Sen. Com. on Judiciary, analysis of Assem. Bill No. 897 (1993-1994 Reg. Sess.) as amended Apr. 28, 1993, p. 2, italics added.) Moreover, the Legislature canvassed the difficulties with current legal options. In particular, it noted prosecution under a second degree murder theory was problematic because “implied malice is subjective rather than objective. Accordingly, it must be proved that the defendant was subjectively aware that his or her acts or omissions endangered the child’s life.” (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 897 (1993-1994 Reg. Sess.) as amended Aug. 26, 1993, p. 2.) This interpretation of language similar to that contained in section 273a, subdivision (a) further supports our conclusion that the Legislature intended a criminal negligence mens rea to apply for felony child endangerment.
Defendant argues it is anomalous to have a mens rea of general intent for direct infliction of abuse, as we held in Sargent, and a different standard of culpability, criminal negligence, for indirect abuse: “By insisting on a lesser state of mind (criminal negligence) for indirect abusers, the People argue in essence that direct abusers should be afforded more protection by the law than indirect abusers.”
We discern no obstacle to requiring different mental states for distinct types of conduct prohibited by a single penal statute. Section 273a, subdivision (a) addresses a wide variety of conduct and omissions. The conduct found to require a general intent mens rea in Sargent was direct infliction of unjustifiable physical pain or mental suffering. This prong of the statute, unlike the other three, does not expressly require the conduct to be willful. (But see People v. Smith, supra, 35 Cal.3d at p. 806, limited on other grounds by People v. Felix (2000) 22 Cal.4th 651, 657-658 [94 Cal.Rptr.2d 54, 995 P.2d 186] [violation of all prongs of § 273a, subd. (a) must be willful].) Moreover, use of a general intent standard is appropriate when the statute criminalizes commission of a battery, or direct infliction of unjustifiable pain or suffering. By contrast, criminal negligence is the appropriate standard when the act is intrinsically lawful, such as leaving an infant with a babysitter, but warrants criminal liability because the surrounding circumstances present a high risk of serious injury. Criminal negligence is not a “lesser state of mind”; it is a standard for determining when an act may be *790 punished under the penal law because it is such a departure from what would be the conduct of an ordinarily prudent or careful person under the same circumstances. When that departure endangers the person or health of a child and is “under circumstances or conditions likely to produce great bodily harm or death,” it constitutes a felony violation of the child endangerment statute. (§ 273a, subd. (a).)
Defendant further asserts “[willfulness implies purposeful misconduct whereas negligence implies unintentional misconduct. To recognize both mental states in the same criminal statute would require a finding that the violator acted accidentally on purpose.” We do not think the Legislature’s use of the word “willful” is inconsistent with a criminal negligence standard. We have suggested on at least one occasion that an act or omission amounting to criminal negligence can constitute a willful violation of the law. (People v. Simon (1995) 9 Cal.4th 493, 507, 522 [37 Cal.Rptr.2d 278, 886 P.2d 1271].) Moreover, the conduct prohibited by section 273a, subdivision (a), or any statute requiring criminal negligence, is not “accidéntalo,” but a gross departure from the conduct of an ordinarily prudent person.
Defendant asserts one violating section 273a, subdivision (a) must have a subjective awareness of the risk in order to violate the felony endangerment prong of section 273a, subdivision (a). Again, however, nothing in the statutory language—willfully causing or permitting a child to be placed in a situation where his or her person or health is endangered—appears to require such an awareness. Section 273a, subdivision (a) expressly imposes no specific mental state requirement other than willfulness, which as noted, has varying meanings under different criminal statutes. Moreover, the Legislature apparently sought to avoid requiring a subjective mental state in the statute. (See ante, at p. 789.) Section 273a, subdivision (a) has consistently been interpreted to contain a criminal negligence standard, and defendant demonstrates no persuasive reason for such a radical and novel departure from existing law.
Unlike Garcia, supra, 25 Cal.4th at page 752, there-is no question in this case defendant knew of her duty to not endanger her infant. Rather, the issue is whether defendant is criminally culpable for entrusting her infant with a child care provider who had a history of violence.
Moreover, as the Attorney General argues, such an approach would appear inconsistent with the purpose of section 273a, subdivision (a), which is to protect vulnerable members of society from a wide range of dangerous situations. Further, defendant’s interpretation would “harm children and the elderly by protecting their abusers from prosecution through the erection of *791 an unjustified, and difficult to establish, evidentiary hurdle of ‘subjective awareness of the risk.’ ” For example, in Walker, supra, 47 Cal.3d 112, the mother’s concern for her daughter and good faith belief prayer would cure her, would negate such subjective intent despite the fact the mother intentionally withheld medical treatment from the four-year-old daughter resulting in her suffering and death. Similarly, the rash of recent infant hyperthermia deaths from parents or other caretakers leaving infants in closed vehicles for long periods of time would also analytically fall within such an approach. Such caretakers could claim they had no idea the car temperature would rapidly rise to a fatal level. Engrafting such a restrictive element onto the statute would contravene the legislative intent to impose criminal liability on persons who flagrantly disregard the health and safety of children in then-custody or care.
Defendant asserts that the “facts of this case aptly illustrate the necessity for retaining a subjective state of mind element (willfulness) rather than a purely objective test (criminal negligence).” As noted, however, willfulness and criminal negligence are not necessarily inconsistent. For this reason, we also reject defendant’s assertion that willfulness is a “subjective state of mind.”
Defendant asserts, however, that “criminal liability based only on an objective standard of care threatens intrusion upon constitutionally protected parental rights.” “A standard of criminal liability which is based not on what the parent thinks, but on what other people think of the parent, intrudes upon the parent’s constitutionally protected discretion.” Under defendant’s proposed test, however, only parents who demonstrate a subjective willingness to imperil their children are criminally punished, and society’s standards of reasonable conduct have no application.
Defendant further argues that a reasonable person or criminal negligence standard “does not permit consideration of the human and emotional factors affecting the parent’s outlook and judgment.” In particular, she argues the “so-called reasonable person” might fault defendant for trusting codefendant Lebrón, “but the ‘reasonable person’ does not love Hiram Lebrón like she does. The ‘reasonable person’ might fault Eva Valdez for failing to recognize Hiram Lebrón as a dangerous person, but the ‘reasonable person’ is never blinded by love, never fools herself, and never suffers from denial.” Contrary to defendant’s assertion, however, the standard we uphold today does not require “complete objectivity” or even good judgment. Rather, it makes criminal conduct that is such a departure from what would be the conduct of an ordinarily prudent or careful person under the same circumstances as to be incompatible with a proper regard for human life.
*792 While not directly raised in the Attorney General’s petition for review, we address the following claim for the guidance of the Court of Appeal on remand. Defendant asserts that the CALJIC instructions given below failed to require willfulness. The jury was instructed in the language of CALJIC No. 9.37, which states, “In order to prove this crime, each of the following elements must be proved: [¶] . . . [¶] . . .A person who had care or custody of a child ... [¶] willfully caused or, as a result of criminal negligence, permitted the child to be placed in a situation where his or her person or health was endangered.” Defendant is correct the instruction could be understood to link the word “willfully” only to the word “caused,” and not to “criminal negligence.” However, any failure to instruct on willfulness was not prejudicial, because the jury also found true the enhancement under section 12022.95. This instruction required the jury to find defendant, “under circumstances or conditions likely to cause great bodily harm or death, willfully caused or permitted [the victim] to suffer . . . or . . . willfully caused or permitted [the victim] to be injured or harmed, and that injury or harm resulted in her death.” (See Kinkead, supra, 80 Cal.App.4th at pp. 1118-1119 [any error to instruct on willfulness for felony child endangerment not prejudicial because of instruction on enhancement allegation under § 12022.95].)
Disposition
The judgment of the Court of Appeal is reversed, and the case remanded to that court for further proceedings consistent with this opinion.
George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.

All further statutory references are to the Penal Code.

The enhancement was subsequently dismissed because it violated the former double-the-base-term limitation. (§ 1170.1, former subd. (g), as amended by Stats. 1994, ch. 1188, § 12.7, p. 7202.) With the parties’ agreement, the upper term of six years on the substantive offense was imposed, resulting in the identical sentence.

Section 273a provides in relevant part: “(a) Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health is endangered, shall be punished by imprisonment in a county jail not exceeding one year, or in the state prison for two, four, or six years.
“(b) Any person who, under circumstances or conditions other than those likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes *784 or permits that child to be placed in a situation where his or her person or health may be endangered, is guilty of a misdemeanor.”
The primary difference between the two subdivisions is that subdivision (a) requires the proscribed conduct occur under “circumstances or conditions likely to produce great bodily harm or death”; subdivision (b), a misdemeanor, has no such requirement.

Section 368, subdivision (b)(1) provides: “Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any elder or dependent adult, with knowledge that he or she is an elder or a dependent adult, to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any elder or dependent adult, willfully causes or permits the person or health of the elder or dependent adult to be injured, or willfully causes or permits the elder or dependent adult to be placed in a situation in which his or her person or health is endangered, is punishable by imprisonment in a county jail not exceeding one year, or by a fine not to exceed six thousand dollars ($6,000), or by both that fine and imprisonment, or in the state prison for two, three, or four years.” Section 368 “was enacted in order to protect members of a vulnerable class from abusive situations in which serious injury or death is likely to occur.” (Heitzman, supra, 9 Cal.4th at p. 203.) Section 368 was patterned on and is virtually identical to section 273a. Cases interpreting one section are therefore appropriately used to interpret the other. (Heitzman, at pp. 204-205.)f

Section 12022.95 provides in relevant part: “Any person convicted of a violation of Section 273a, who under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or injury that results in death, or having the care or custody of any child, under circumstances likely to produce great bodily harm or death, willfully causes or permits that child to be injured or harmed, and that injury or harm results in death, shall receive a four-year enhancement for each violation, in addition to the sentence provided for that conviction.”