Filed 7/24/15  P. v. Henning CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D065950 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. JCF32026) |
| MIRANDA ALEXIS HENNING, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Imperial County, William D. Lehman, Judge.  Affirmed as modified.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Anthony DaSilva and Peter Quon, Jr. for Plaintiff and Respondent.

A jury convicted Miranda Alexis Henning of possessing a controlled substance and child endangerment.  The trial court sentenced her to prison for an aggregate term of four years.  Henning appeals, contending substantial evidence did not support her child

endangerment conviction. She also contends the trial court (1) abused its discretion when it failed to grant probation, and (2) imposed improper fines. We modify the fines imposed, but otherwise reject Henning's arguments and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On November 5, 2013, Henning resided in Holtville, California with her father, Philip Castro, her grandmother, Stefana Castro, her then-two-year-old, son A, and her infant daughter. At times, Henning's boyfriend, Fernando Munoz, also lived at the home. That morning, Irma Rodriguez, Philip's fiancé, arrived at the home and knocked on the front door. Son A partially opened the door by unlocking the front door's deadbolt and other locking mechanism; however, he was not tall enough to reach a latch higher on the door. Stefana later released the upper latch to let Rodriguez into the home.

Later that morning, officers, including Imperial County District Attorney Special Agent Raphael Peraza and Imperial County Probation Department Special Agent Armando Merino, executed a search warrant at the residence. Henning and Munoz were not in the home at the time, but were contacted and brought to the home. Inside the residence, officers noticed a strong stench emanating from the bathroom in the master bedroom created by a septic tank backup. The toilet had overflowed and soaked the rug in the master bedroom. When he entered Henning's bedroom, Special Agent Peraza saw a bed, a crib and a dresser with drawers. Some drawers of the dresser were missing and many items, including a transparent blue-colored plastic box, were on top of the dresser. Inside one of the drawers, officers found a glass pipe commonly used by people to smoke methamphetamine, a cigarette lighter and a barbecue lighter. Inside the plastic box were

2

a Ziploc-type plastic bag and a heat-sealed plastic bag, both containing a white crystalline substance. Later, forensic testing of the contents of the two plastic bags confirmed they contained, respectively, 4.606 grams and 0.32 grams of methamphetamine.

DISCUSSION

I. *Sufficiency of the Evidence*

A. Standard of Review

In assessing the sufficiency of the evidence, we examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Hillhouse* (2002) 27 Cal.4th 469, 496.) We must presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) Unless it is clearly shown that "on no hypothesis whatever is there sufficient substantial evidence to support the verdict," we will not reverse. (*People v. Hicks* (1982) 128 Cal.App.3d 423, 429.)

"The standard of review is the same in cases in which the People rely mainly on circumstantial evidence. [Citation.] 'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. "'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a

3

contrary finding does not warrant a reversal of the judgment.'" [Citations.]' [Citation.] '"Circumstantial evidence may be sufficient to connect a defendant with the crime and to prove . . . guilt beyond a reasonable doubt."' [Citations.]" (*People v. Stanley* (1995) 10 Cal.4th 764, 792-793.)

B.  Analysis

Henning contends the evidence did not support her conviction for felony child endangerment as it did not prove that her acts exposed son A to circumstances or conditions in her home that were likely to produce or result in great bodily harm or death. She notes that the children slept in the living room and did not frequent her bedroom. She asserts the drugs belonged to Munoz and there was no evidence son A had the manual dexterity to manipulate the door handle to open her bedroom door, open the plastic box, open the plastic containing the drugs and consume four grams of methamphetamine.

As relevant here, to support a conviction for felony child endangerment, the evidence must show that a person "under circumstances or conditions likely to produce great bodily harm or death," "willfully cause[d] or permit[d] [a] child to be placed in a situation where his or her person or health is endangered." (Pen. Code, § 273a, subd. (a); see CALCRIM No. 821.)  The statute is intended to protect children from the risk of injury and does not require actual injury.  (*People v. Valdez* (2002) 27 Cal.4th 778, 784.) In endangerment cases, "the necessary mens rea . . . is criminal negligence." (*In re L.K.* (2011) 199 Cal.App.4th 1438, 1445.)  Criminal negligence involves "'"aggravated, culpable, gross, or reckless . . . conduct . . . [that is] such a departure from what would be

4

the conduct of an ordinarily prudent or careful [person] under the same circumstances as to be incompatible with a proper regard for human life. . . ."'" (*People v. Valdez*, *supra*, at p. 783.)

Henning testified she was not aware of the existence of drugs in her room, that the children slept in the living room and did not sleep in or use her room. Other evidence, however, contradicted Henning's testimony. Rodriguez, who was familiar with the living arrangements at the home, testified that she has seen Henning sleep in the living room with her children and the children sleeping inside Henning's room. Special Agent Merino saw children's clothes, toys and other child-type articles in Henning's bedroom that suggested the two children stayed in that bedroom. Additionally, the jury could reasonably infer Henning knew of the existence of the methamphetamine inside the plastic box as she admitted the plastic box and some of the items inside the box belonged to her.

Henning testified that when she left in the morning, the children were asleep on the living room sofa and her bedroom door was closed. The jury, however, could infer son A had the ability to open the bedroom door based on Rodriguez's testimony that son A reached and manipulated the deadbolt and locking mechanism of the home's front door to open the door for her earlier that morning. Based on the foul odor, officers never had son A stand by the dresser to determine if he could reach the plastic box. Nonetheless, ample evidence supported the inference that son A could reach the box, open the box and open the Ziploc bag to access the methamphetamine inside.

5

Namely, son A measured approximately 34 inches tall and could reach items 13 inches over his head. The door knob of Henning's bedroom measured 36 inches above the floor. The dresser in Henning's room stood 31 inches tall. Although there was no evidence presented regarding the depth of the dresser, the jury could infer based on a photograph of the dresser, that a child 34 inches tall who could reach items 13 inches over his head, could also reach anything located on top of the dresser. Moreover, Special Agents Peraza and Merino and a social worker all opined that son A could reach the plastic box. Finally, a physician opined that the consumption of four grams of methamphetamine would be lethal for the average two year old.

Viewing the record in the light most favorable to the judgment, the jury could reasonably find Henning placed son A in a situation endangering his health and under circumstances likely to produce great bodily harm or death. (See *People v. Toney* (1999) 76 Cal.App.4th 618, 622-623 [storage of chemicals used to manufacture methamphetamine in home with child sufficient to support conviction for felony child endangerment]; *People v. Hansen* (1997) 59 Cal.App.4th 473, 479-480 [felony child endangerment where the caretaker stores a loaded gun in a home occupied by children without denying the children access to the weapon].)

## II. *Denial of Probation*

Henning conceded that she was statutorily ineligible for probation because she had previously suffered two felony convictions, one in 2008 (receiving stolen property), and one in 2011 (harboring aliens), at the ages of 20 and 23, respectively. (Pen. Code § 1203, subd. (e)(4).) Nonetheless, she argued to the trial court that it should grant probation with

6

participation in a drug program based on her young age, the existence of two young children, her history of drug abuse, the nature of the crimes and because the drugs belonged to Munoz. She asserts the trial court abused its discretion by rejecting her claim that her case was "'unusual'" and then denying her probation. Specifically, she argues the trial court did not adequately consider all mitigating factors as set forth in California Rules of Court, rules 4.413 and 4.414. (Undesignated rule references are to the California Rules of Court.) We disagree.

When a defendant is presumptively ineligible for probation, the trial court must determine whether the presumption against probation has been overcome using the criteria set forth in rule 4.413. (*People v. Superior Court (Du)* (1992) 5 Cal.App.4th 822, 830 (*Du*) [applying former rules 413 and 414, predecessors to rules 4.413 and 4.414].) If the court finds the case to be an unusual one, it must then decide whether to grant probation, utilizing the statutory criteria set forth in rule 4.414. (*Ibid.*) "[M]ere suitability for probation does not overcome the presumptive bar. . . . [I]f the statutory limitations on probation are to have any substantial scope and effect, 'unusual cases' and 'interests of justice' must be narrowly construed and, as rule [4.413] provides, limited to those matters in which the crime is either atypical or the offender's moral blameworthiness is reduced." (*People v. Superior Court (Dorsey)* (1996) 50 Cal.App.4th 1216, 1229.)

We review the trial court's finding that a case may or may not be unusual for abuse of discretion. (*Du, supra*, 5 Cal.App.4th at p. 831.) We will not reverse the trial court's decision merely because reasonable people might disagree; rather, the trial court's

7

decision must be so irrational or arbitrary that no reasonable person could agree with it. (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

Rule 4.413(c)(2) sets forth three criteria upon which a trial court may find a defendant's case to be unusual. As relevant here, rule 4.413(c)(2)(C) states that an unusual case may be found where the defendant "is youthful or aged, *and* has no significant record of prior criminal offenses." (Italics added.) While Henning is youthful, she has a significant record of prior criminal offenses. At ages 15 and 16, juvenile courts found true the crime of being under the influence of a controlled substance. At ages 18 and 19, Henning was convicted of misdemeanor possession of drug paraphernalia and misdemeanor burglary. At age 20, she suffered her first felony conviction for receiving stolen property. That same year, she suffered a conviction for misdemeanor possession of a controlled substance. After all these true findings or convictions, the trial court placed Henning on probation. At age 23, she received federal probation for transporting illegal persons.

Henning has not demonstrated that the trial court abused its discretion in arriving at its decision that the presumption of probation ineligibility was not overcome. Because the trial court determined the presumption of probation ineligibility had not been overcome, there was no need for the court to address the rule 4.414 factors governing a grant of probation. Accordingly, there is no need for us to discuss Henning's arguments relating to these factors. (See *Du*, *supra*, 5 Cal.App.4th at p. 830.)

8

### III. *Fines*

At the sentencing hearing, the trial court ordered Henning to pay "the minimum" restitution fine and parole revocation fine of $300. As the Attorney General concedes, the statutory minimum fines under Penal Code sections 1202.4 and 1202.45 at the time Henning committed the crimes were $280. Henning asks us to order the currently imposed restitution and parole revocation fines be reduced to $280 each. Based on the record, the Attorney General concedes, and we agree, that the fines must be reduced.

### DISPOSITION

The restitution fine and parole revocation fine are each ordered reduced from $300 to $280, under the version of Penal Code sections 1202.4, subdivision (b)(1), and 1202.45 in effect at the time defendant committed the charged crimes. The superior court is ordered to modify the abstract of judgment to reflect the reduction in the restitution and parole revocation fines to $280 each, and to forward a certified copy to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

McINTYRE, J.

WE CONCUR:

BENKE, Acting P. J.

IRION, J.

9