Filed 7/29/21  P. v. Huston CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C086901 |
| Plaintiff and Respondent, | (Super. Ct. No. 15F04307) |
| v. | |
| ROBERT PATRICK HUSTON, | |
| Defendant and Appellant. | |

Defendant Robert Patrick Huston appeals a judgment entered following the jury's determination that he had committed infliction of corporal injury on a spouse resulting in a traumatic condition (Pen. Code, § 273.5, subd. (a); count one)[1] and child endangerment (§ 273a, subd. (b); count two) for which he received five years' felony probation. Defendant seeks remand to give the trial court an opportunity to consider granting him

---

[1] Undesignated statutory references are to the Penal Code.

1

mental health diversion as authorized by section 1001.36, which became effective June 27, 2018. (Stats. 2018, ch. 34, § 24.) He also seeks to correct the erroneous inclusion of victim restitution not awarded by the trial court in the minute order following sentencing, as well as in his probation conditions. In supplemental briefing, defendant asks that we reverse his misdemeanor child endangerment conviction for instructional error.

During the pendency of briefing, the Supreme Court decided *People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*), recognizing section 1001.36 applies retroactively to defendants whose judgments are not final on appeal. (*Frahs,* at pp. 640-641.) Because the record shows that defendant may suffer from a qualifying mental disorder, he is entitled to a limited remand so that the trial court may consider defendant's eligibility for mental health diversion. (*Id.* at p. 640.) We conditionally reverse the judgment of conviction and will remand for further proceedings, including the correction of the record. In all other respects, the judgment is affirmed.

## FACTUAL AND PROCEDURAL HISTORY

The People's August 19, 2016, information charged defendant with infliction of corporal injury on a spouse resulting in a traumatic condition (§ 273.5, subd. (a); count one) and misdemeanor child endangerment (§ 273a, subd. (b); count two). A few days into defendant's jury trial, it was discovered that he might be eligible for veteran's court, and the parties agreed to a brief continuance. The People later represented that, in defendant's particular case, the veteran's court issue could be determined after trial, and the trial continued.

The People's evidence showed that defendant assaulted his then wife, Jo.D., during a custody exchange through her partially open car window, injuring her eye, head, and hand, as well as damaging the car's rain guard. Defendant's daughter, Ja.D., witnessed the incident from defendant's car, was crying, and yelled for him to stop. Defendant testified in his own defense that Jo.D. had been the aggressor during the

2

incident, closing the window on his arm when he reached in to grab paperwork from her. If he hit her, it was unintentional as he was trying to get his arm out of the car. The jury convicted defendant of both counts.

Sentencing in the matter was deferred pending the veteran's court determination, necessitating multiple continuances. Ultimately, it was determined defendant was ineligible to participate in veteran's court, although the record does not contain a decision articulating the basis for this denial, which was made by a different judge. On March 16, 2018, the trial court placed defendant on five years' felony probation with 364 days in jail, based on defendant's minimal record, honorable military discharge, and mental impairments arising from military service. Defendant timely appealed.

## DISCUSSION

## I

## *Mental Health Diversion*

Effective June 27, 2018, the Legislature passed Assembly Bill No. 1810 (2017-2018 Reg. Sess.), which added sections 1001.35 and 1001.36 to the Penal Code (Stats. 2018, ch. 34, § 24) and authorizes pretrial diversion for qualifying defendants with mental health disorders that contributed to the commission of the charged offense. (See *Frahs, supra*, 9 Cal.5th at pp. 624, 626.) Two express purposes of the law are to promote "[i]ncreased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety" and provide "diversion that meets the unique mental health treatment and support needs of individuals with mental disorders." (§ 1001.35, subds. (a) & (c); *Frahs,* at p. 626.)

The statute defines " 'pretrial diversion' " as "the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment . . . ." (§ 1001.36, subd. (c).) The trial court may grant pretrial diversion under section 1001.36 if it finds: (1) defendant suffers from an identified mental

3

disorder, including posttraumatic stress disorder (PTSD) and bipolar disorders; (2) the mental disorder was a significant factor in the commission of the charged offense; (3) defendant's symptoms will respond to treatment; (4) defendant consents to diversion and waives his speedy trial rights; (5) defendant agrees to comply with treatment; and (6) defendant will not pose an unreasonable risk of danger to public safety if treated in the community.  (§ 1001.36, subd. (b)(1)(A)-(F).)  If diversion is granted, the court may postpone prosecution for a maximum of two years and refer the defendant to an inpatient or outpatient mental health treatment program.  (§ 1001.36, subd. (c)(1)(B), (c)(3).) Assuming the defendant performs satisfactorily during the period of diversion, the court must dismiss his criminal charges.  (§ 1001.36, subd. (e).)

The Courts of Appeal were divided on the question of whether section 1001.36 applies retroactively to persons who were tried, convicted, and sentenced before section 1001.36 went into effect, but as to whom judgment is not yet final.  In June 2020, our Supreme Court resolved the issue in *Frahs*.  The Supreme Court held that because section 1001.36 provides a possible ameliorating benefit for a class of persons, namely, certain defendants with qualifying mental disorders, and neither the statute's text nor its legislative history clearly signals the Legislature's intent to overcome *Estrada*'s[2] inference of retroactivity, section 1001.36 applies retroactively to cases where the judgment is not yet final.  (*Frahs, supra*, 9 Cal.5th at p. 624.)

In *Frahs*, our Supreme Court also rejected the People's argument that the defendant was not entitled to remand because he failed to demonstrate that he satisfied all six threshold eligibility requirements for diversion.  (*Frahs, supra*, 9 Cal.5th at pp. 637-638; see § 1001.36, subd. (b).)  The Supreme Court concluded "a conditional limited remand for the trial court to conduct a mental health diversion eligibility hearing is

---

[2]  *In re Estrada* (1965) 63 Cal.2d 740.

4

warranted when, as here, the record affirmatively discloses that the defendant appears to meet at least the first threshold eligibility requirement for mental health diversion—the defendant suffers from a qualifying mental disorder." (*Frahs,* at p. 640.) Here, the record discloses defendant suffers from depression, a traumatic brain injury, PTSD, and bipolar disorder. Thus, defendant "appears to meet at least the first threshold eligibility requirement for mental health diversion." (*Ibid.*)

Relying on *People v. Jefferson* (2019) 38 Cal.App.5th 399, the People argue that remand would be futile because defendant was found ineligible to participate in veteran's court. *Jefferson* is distinguishable. In that case, there was a jury trial on whether Jefferson was not guilty by reason of insanity, and the record contained "evidence of defendant's mental health history including defendant's medical records, his testimony regarding his mental health history, the prosecution's expert testimony regarding defendant's mental state, video evidence of the attempted store robbery, and the police interview with defendant shortly after the crimes took place." (*Id.* at p. 408; see *id.* at pp. 403-404.) It was against this background that "the trial court clearly indicated defendant's alleged mental health disorder was not a significant factor in his commission of the charged offenses, making him ineligible for diversion." (*Id.* at p. 408.)

Here, the record only contains defendant's request for a referral to veteran's court and certain papers from the veteran's administration that document his diagnoses and disability status. As the defendant's trial and sentencing occurred before section 1001.36 went into effect, the record does not contain any reports or testimony concerning how defendant's diagnosed mental conditions may have contributed to the offenses at issue in this case.[3] However, we note the sentencing judge identified defendant's conditions as

---

[3] At oral argument, the People argued, for the first time, that a defendant forfeits mental health diversion if he/she disavows that his/her mental health had anything to do with the

5

substantially contributing to the decision not to send defendant to prison. Given the state of the record, the trial court is in the best position to determine whether defendant is eligible for mental health diversion.

Moreover, the qualifications for veteran's court and mental health diversion do not align in such a way that we can determine that defendant is necessarily ineligible for mental health diversion based solely on the denial of his veteran's court application. (Compare § 1001.36, subd. (b)(1)(B) [mental health diversion requiring the mental disorder to be a "significant factor in the commission of the charged offense," which is defined as "defendant's mental disorder substantially contribut[ing] to the defendant's involvement in the commission of the offense"] with § 1170.9, subd. (a) [veteran's court requiring defendant "commit[] the offense as a result of a . . . traumatic brain injury . . . or mental health problems stemming from service"].)

Based on this record, we conclude that conditional reversal of judgment and remand is appropriate for the trial court to conduct a mental health diversion eligibility hearing. (See *Frahs, supra*, 9 Cal.5th at p. 640; § 1001.36, subd. (b)(3).)

## II

### *The Record Corrections*

Defendant requests we correct the erroneous inclusion of victim restitution not awarded by the trial court in the minute order following sentencing. The People agree the trial court did not award restitution at sentencing, and its inclusion in the minute order was erroneous. We agree with the parties. Because the amount of victim restitution was disputed, the court did not award victim restitution at sentencing. Accordingly, the minute order reflecting a restitution award on the day of sentencing must be corrected.

---

crime. Here, the record is not clear on this point. We need not decide this issue and direct the trial court to consider this issue if raised by the parties.

6

# III

## *The Instructional Error*

The parties agree that the trial court erred when it used the jury instruction intended for direct infliction of pain or mental suffering, a general intent crime, rather than the instruction for indirect child endangerment, which would have included a criminal negligence instruction. We conclude this error was harmless beyond a reasonable doubt.

Section 273a, subdivision (b) proscribes four categories of conduct: (1) willfully causing or permitting a child to suffer, (2) inflicting unjustifiable physical pain or mental suffering, (3) having care or custody of a child, willfully causing or permitting the child to be injured, or (4) willfully causing or permitting a child to be placed in a situation where his health may be endangered. (See *People v. Valdez* (2002) 27 Cal.4th 778, 783 (*Valdez*).)

The second category involves " 'direct infliction,' " the remaining three categories involve " 'indirect infliction.' " (*In re L.K.* (2011) 199 Cal.App.4th 1438, 1445.) Direct infliction requires general criminal intent, similar to battery or assault with a deadly weapon. Indirect infliction requires criminal negligence. (*Ibid.*)

"Criminal negligence is ' "aggravated, culpable, gross, or reckless . . . conduct . . . [that is] such a departure from what would be the conduct of an ordinarily prudent or careful [person] under the same circumstances as to be incompatible with a proper regard for human life . . . ." ' [Citation.] 'Under the criminal negligence standard, knowledge of the risk is determined by an objective test: "[I]f a reasonable person in defendant's position would have been aware of the risk involved, then defendant is presumed to have had such an awareness." ' [Citations.]" (*Valdez, supra*, 27 Cal.4th at p. 783.) " '[T]here can be no criminal negligence without actual or constructive knowledge of the risk.' " (*Ibid.*)

7

Here, the jury was instructed with the second category, that defendant's mens rea must be willful, rather than criminally negligent. Specifically, the trial court instructed: "The defendant is charged in Count 2 with child abuse in violation of Penal Code section 273a[ subdivision ](b). To prove the [d]efendant is guilty of this crime, the People must prove the following: One, the [d]efendant willfully inflicted unjustifiable mental suffering upon a child. Someone commits an act willfully when he or she does it willingly or on purpose. A child is any person under the age of 18 years. Unjustifiable mental suffering is pain or sufferings [*sic*] that is not reasonably necessary or is excessive under the circumstances." (See CALCRIM No. 823.)

The jury asked in deliberations: "Does [defendant] willfully causing physical trauma to his wife in front of their child, automatically make him guilty of [CALCRIM No.] 823(a) which states 1) the defendant willfully inflicted unjustifiable mental suffering on a child." The court responded that: "The term 'willful' as utilized in section 273a[ subdivision ](b) does not require intent to injure the child but implies simply a purpose or willingness to commit the act. It does not require any intent to violate law, or to injure another, or to acquire any advantage." Further, the court clarified that the intentional act at issue was defendant's actions toward the mother. We agree with the parties that defendant's conduct is more aptly described as indirect abuse, and thus the court should have instructed on indirect abuse. Nevertheless, we conclude any error in instructing on direct abuse was harmless beyond a reasonable doubt. (See *People v. Chun* (2009) 45 Cal.4th 1172, 1201 [harmlessness of instructional error on elements of offenses must be established beyond a reasonable doubt]; *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705].)

A review for harmless error of the trial court's failure to instruct on an omitted element requires a " 'thorough examination of the record.' " (*People v. Mil* (2012) 53 Cal.4th 400, 417 (*Mil*).) " 'If, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the

8

error—for example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding—it should not find the error harmless.' [Citation.] On the other hand, instructional error is harmless 'where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence.' [Citations.] Our task, then, is to determine 'whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element.' " (*Ibid.*)

Here, the trial court instructed that in order to find defendant guilty, he had to have willfully inflicted suffering on his daughter, Ja.D. Further, the court clarified that the willful act at issue to that mental suffering was defendant's assault of Ja.D.'s mother. Thus, the jury necessarily determined that defendant inflicted mental suffering upon Ja.D. by virtue of her witnessing her mother's brutal beating.[4] Under these circumstances, we are satisfied that the omission of the indirect child endangerment and criminal negligence instructions was harmless beyond a reasonable doubt. (*Mil, supra*, 53 Cal.4th at p. 417.)

Indeed, there is overwhelming evidence that defendant subjected Ja.D. to indirect child endangerment by virtue of her witnessing defendant's brutal assault of mother,

---

[4] This is consistent with the People's closing argument that defendant "unjustifiab[ly]" inflicted emotional suffering on Ja.D. because he had no reason to approach mother's car at the custody exchange after Ja.D. was in his car. Nonetheless, defendant chose to assault mother in front of Ja.D., thus inflicting emotional harm. His actions were "not reasonable" and "excessive under the circumstances." In response, defendant argued even if he had punched mother in front of Ja.D. that would not constitute willful infliction of emotional distress on a child; rather it would just be "inappropriate conduct" and "bad parenting" that would cause "the corollary or secondary impact of . . . some sort of trauma to his daughter." In reply, the People argued defendant would not have to "intentionally" harm Ja.D., rather, he would have to "intentionally [do] the act that led to her emotional turmoil." This argument is not inconsistent with a finding of criminal negligence, which focuses on the objective reasonableness of the conduct. (See *Valdez, supra*, 27 Cal.4th at pp. 785, 789-790; *id.* at p. 791 [noting "willfulness and criminal negligence are not necessarily inconsistent"].)

9

which occurred during a custody exchange through her partially open car window, and which caused injuries to mother's eye, head, and hand, as well as damaging the car's rain guard. This assault included defendant grabbing mother by her hair and slamming her head into the car window. He then smashed her sunglasses into her head and punched her in the eye, resulting in partial blindness in her left eye that had mostly, but not completely, resolved by the time of trial. When mother tried to protect herself, defendant grabbed her right hand and twisted her fingers so severely that they swelled and could not be used for weeks. Ja.D. saw her father grab mother's hair and shake her. She also heard defendant screaming and mother crying. Ja.D., who was seated in defendant's car, cried and screamed for her father to stop.

Immediately after the assault when they were driving away, defendant tried to convince Ja.D. that mother had been the aggressor, which Ja.D. knew was false because she had been there. Ja.D. repeated defendant's version of events to an uncle and defendant's girlfriend because she was afraid defendant would hurt her if she did not. She still loved defendant, but no longer trusted him, nor did she think he was a good person. Thereafter, Ja.D. required counseling, presumably to help her with the resulting nightmares, difficulty sleeping, trouble eating, protective feelings regarding her mother, and her fear of going home because defendant would come and find them.

It is clear to this court that defendant's actions were a gross departure from those of a reasonable person, showed indifference to the risk of harm that would be inflicted by savagely beating Ja.D.'s mother in front of her, and were of such a nature that a reasonable person in defendant's position would have been aware that witnessing such an assault held a natural and probable risk of harming Ja.D. (*People v. Valdez, supra*, 27 Cal.4th at pp. 783; CALCRIM No. 823.) Based on the jury's findings that defendant *willfully* inflicted mental suffering on Ja.D. premised upon willful harm to mother and that defendant inflicted corporal injury on mother resulting in a traumatic condition, we

10

conclude the failure to give the indirect child endangerment and criminal negligence instructions was harmless beyond a reasonable doubt. (*Mil, supra*, 53 Cal.4th at p. 417.)

## DISPOSITION

The judgment is conditionally reversed. The case is remanded to the trial court with instructions to determine whether defendant is eligible for diversion under section 1001.36 and, if so, to exercise its discretion within the procedures set forth in the statute. If the court does not grant diversion, or if the court grants diversion but later determines the criminal proceedings should be reinstated, the court shall reinstate the judgment. The trial court shall also correct the March 16, 2018, minute order which erroneously lists restitution not awarded to the victim. In all other respects, the judgment is affirmed.


/s/
HOCH, J.



We concur:



/s/
RAYE, P. J.



/s/
HULL, J.

11