Filed 5/5/26  P. v. Steele CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSEPH EARL STEELE,<br><br>    Defendant and Appellant. | G064554<br><br>(Super. Ct. No. FWV21000319)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of San Bernardino County, Michael A. Camber, Judge. Affirmed

Michelle T. LiVecchi-Raufi, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson, Christine Y. Friedman and Tyler L. Krentz, Deputy Attorneys General, for Plaintiff and Respondent.

\*       \*       \*

Defendant Joseph Earl Steele was drunk and went to his neighbor's garage. Three teenage boys and an 11-year-old boy were hanging out in the garage. Steele dropped a handgun and a bag of bullets on a desk, then encouraged the children to load and handle the weapon. Steele pointed the gun at the 11-year-old boy, another child loaded the gun and waived it around, and three of the children later told police they were scared.

A jury convicted Steele of four crimes: assault, two counts of child endangerment, possession of a firearm by a felon, and unlawful possession of ammunition. The trial court imposed a four-year, six-month sentence.

Steele claims that there is insufficient evidence to support his convictions for child endangerment. We disagree.

There is substantial evidence Steele: 1) caused or permitted two children to suffer unjustifiable mental suffering; 2) caused or permitted the children to suffer under circumstances or conditions likely to produce great bodily harm or death; and 3) acted with criminal negligence. (See Pen. Code, § 273a, subd. (a).)[1] Thus, we affirm the judgment.

I.

FACTS AND PROCEDURAL BACKGROUND

In November 2020, Deena E. (Mother) lived in an apartment with her seven children (four girls and three boys). The apartment had an attached garage, which Mother had converted to living quarters for her three boys: the youngest boy John Doe One was 11 years old; the middle boy Doe Two was 13 years old; and the oldest boy Doe Three was 15 years old.

On November 16, 2020, during the evening, the three brothers

---

[1] Undesignated statutory references are to the Penal Code.

2

and their 15-year-old cousin were in the garage watching a movie. Steele entered the garage by lifting the door. Steele was a 37-year-old neighbor whom the boys referred to as "Uncle Earl." Steele was stumbling, slurring his words, and smelled of alcohol. Doe Three described Steele as "really, really, really drunk, like you could tell." [2]

Steele had a bag of bullets and a black semiautomatic handgun, which he dropped on a desk in the garage. The handgun had a removable magazine or "clip," which holds the ammunition. A police officer later testified at trial that when a semiautomatic gun is fired, the fired cartridge is extracted, and a fresh bullet is chambered from the clip. Consequently, if a clip is removed from the gun that does not necessarily mean it is unloaded because there can still be a bullet in the chamber.

Initially, the boys were scared and did not want to touch the gun. Doe One said, "I didn't want to be around it." Doe Three said that "it could be deadly." Steele told Doe Three to load the handgun. Doe Three refused, but he did end up "playing around with it" and "picking it up."

Steele gave the gun to Doe Two and told him to load it. Doe Two repeatedly asked Steele if he was sure that he should be loading the handgun. Doe Two eventually complied and struggled with loading the weapon, but he was able to put the clip in it after Steele showed him how. Doe Three said that Doe Two was "waving it around while he's trying to do all this." The other boys told Doe Two to stop waiving the handgun and to "'chill out.'" Steele also loaded the gun. Steele and Doe Two were continually "touching the bullets," and putting in "the clip and then reloading it."

---

[2] The witness's direct quotes are largely taken from their trial testimony, but some quotes are from their recorded statements to police.

Doe Three thought something bad might happen, because "[t]hat's the first thought when . . . you see a drunk man with a gun." Doe Three was afraid that someone might accidentally get shot. At one point, the gun became jammed and Steele said, "I'm gonna unjam it." Doe Three grabbed his blankets and went "under the couch" because he was afraid of getting shot. Steele unjammed the gun and a bullet came out. Steele was saying "crazy stuff, drunk-people-like talk." Doe Three said Steele "started playing with my brother's nipples, like, weird. It was so weird."

When Steele first entered the garage Doe One went inside the home and waited for Steele to leave, but he came back in the garage about 10 minutes later. Doe One said Steele "called me ugly, and I called him ugly back." Steele then "pointed a gun at me." Steele aimed the gun at Doe One's chest and head from about four feet away for about two seconds. Doe One reflexively put his forearms across his face and chest. Steele was laughing while he pointed the gun at Doe One, but no one else was laughing. Doe One then "went under the desk because I got scared."

Doe Three did not know whether the gun was loaded or not because Steele kept putting in the clip "and taking it out so there's no way that we would have known." Steele and the other boys "had only taken the clip out, so it's not like they're checking all the way." Doe Three eventually told Steele to leave. After Steele left, Doe One was crying. Doe One said he didn't want to live there anymore.

*Police Investigation*

On the night of the incident, Mother was out of the house until late. The following morning, Mother called 911 after her children told her about the incident the night before. Mother said Doe One was "'hysterical.'"

Police recorded interviews with Doe One, Doe Two, and Doe Three, who each said they were scared during the encounter with Steele the night before. Police obtained a warrant and searched Steele's residence. In a bathroom, police located a "baggie filled with ammunition." In a bedroom, police found a semiautomatic handgun and a clip containing bullets. Police interviewed Steele, who denied loading a gun with the children.

*Court Proceedings*

The People filed a five-count amended information charging Steele with assault with a semiautomatic firearm (Doe One), child endangerment (Doe One), child endangerment (Doe Two), felon in possession of a firearm, and unlawful possession of ammunition. The People further alleged Steele had two strike priors.

At a jury trial in 2024, Doe One and Doe Three testified during the People's case about what had occurred in the garage in 2020. Doe Three also testified that he ran into Steele at a bowling alley in 2023. Steele asked Doe Three whether he had talked to anybody about the case. Steele told Doe Three: "'Everything's been going good in the case so just don't say anything.'"

Steele testified that on the night of the incident, he was standing outside of the garage facilitating a gun purchase between a buyer and a seller. Steele said one of those persons went inside and set the gun on the table with the bullets. Steele testified that he directed the boys to take a look at the weapon, which he thought was okay. Steele said after Doe Three "played with" the gun he made sure it was not loaded. Steele testified that Doe One "put the clip in and then tried to, you know, push the lever down. And when he did that he waved it around and . . . I immediately grabbed it." Steele said that at the time of the search of his apartment he was not living

5

there.

Steele called Doe Two as a witness. Doe Two testified that Steele was like family to him. Doe Two said that on the night of the incident Steele "came into our garage and was talking to us, and he had the gun. And he asked if I knew how to use it, and I said, 'Yeah.' And he said, 'Show me how to clear it and unload it,' and I did it." Doe Two testified that Doe Three played with the gun. Doe Two said that while holding the handgun, he accidentally pointed it at Doe One. On cross-examination, Doe Two agreed that when loading the gun he had repeatedly asked Steele, "'Are you sure.'" Doe Two testified that he said this to Steele because he was then 13 years old and "I knew I wasn't supposed to have a gun." Doe Two testified that he was not scared during the incident, although he agreed that he had told police on the day following the incident that he was scared.

The jury found Steele not guilty of assault with a firearm (Doe One), but guilty of simple assault as a lesser included offense. The jury found Steele guilty of child endangerment (Doe One), child endangerment (Doe Two), felon in possession of a firearm, and unlawful possession of ammunition. The trial court struck one of the strike priors, and imposed a prison term of four years and six months.

## II.

## DISCUSSION

Steele claims there is insufficient evidence in the record to support his two convictions for child endangerment. We disagree.

In this discussion we will: (A) explicate the standard of review; (B) state the elements of child endangerment; and (C) analyze whether there is substantial evidence to support each element.

6

*A. Standard of Review*

"When considering a challenge to the sufficiency of the evidence . . . , we review the entire record *in the light most favorable to the judgment* to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact *could* find the defendant guilty beyond a reasonable doubt." (*People v. Lindberg* (2008) 45 Cal.4th 1, 27, italics added.) "In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

"The reviewing court presumes in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence." (*People v. Bloom* (1989) 48 Cal.3d 1194, 1208.) "Evidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction." (*Ibid*.)

"Reversal is not warranted 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction.]"'" (*People v. Thomas* (2023) 14 Cal.5th 327, 378.) "Given this deferential standard of review, a 'defendant bears an enormous burden in claiming there is insufficient evidence' to support a conviction." (*People v. Wear* (2020) 44 Cal.App.5th 1007, 1020.)

*B. Child Endangerment*

"Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering . . .

7

shall be punished by imprisonment in a county jail not exceeding one year, or in the state prison for two, four, or six years." (§ 273a, subd. (a).) "If the offense was committed while the defendant was under the influence of drugs or alcohol, the defendant shall abstain from the use of drugs or alcohol during the period of probation and shall be subject to random drug testing by his or her probation officer." (§ 273a, subd. (c)(4).)

A violation of the child endangerment statute "“"can occur in a wide variety of situations: the definition broadly includes both active and passive conduct, i.e., child abuse by direct assault and child endangering by extreme neglect."”" (*People v. Valdez* (2002) 27 Cal.4th 778, 784.) The statute is "'intended to protect a child from an abusive situation in which the probability of serious injury is great.'" (*People v. Sargent* (1999) 19 Cal.4th 1206, 1215–1216.) However, the statute imposes "'no requirement that the actual result be great bodily injury.'" (*Ibid.*)

In this case, the trial court instructed the jury that the prosecution must prove three elements: (1) "[t]he defendant willfully caused or permitted a child to suffer unjustifiable physical pain or mental suffering;" (2) "[t]he defendant caused or permitted the child to suffer under circumstances or conditions likely to produce great bodily harm or death;" and (3) "[t]he defendant was criminally negligent when he caused or permitted the child to suffer." (CALCRIM No. 821.)

The trial court did not instruct the jury with a unanimity instruction. When a defendant engages in a course of conduct, unanimous agreement by the jury on the defendant's specific acts is not required. (See *People v. Culuko* (2000) 78 Cal.App.4th 307, 325 ["Felony child abuse . . . has been held to be a continuous course of conduct crime"].)

*C. Application and Analysis*

We will now review each element as to each victim (Doe One and Doe Two) to determine if there is substantial evidence to support Steele's two convictions for child endangerment.

*1. There is substantial evidence Steele willfully caused or permitted Doe One and Doe Two to experience unjustifiable mental suffering.*

"'Willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, to injure another, or to acquire any advantage." (§ 7, subd. (b)(1).) Suffering is defined as: "The condition of one who suffers; the bearing of pain or distress." (See American Heritage Dict. Online (2026) <https://ahdictionary. com/word/search.html?q=suffering [as of Apr. 29, 2026].) "'*Unjustifiable* physical pain or mental suffering is pain or suffering that is not reasonably necessary or is excessive under the circumstances.'" (*People v. Thiel* (2016) 5 Cal.App.5th 1201, 1208.)

Here, as to the 11-year-old child Doe One, there was testimony that he covered his face and chest, and then tried to take cover when Steele pointed the gun at him. Doe One also said that he did not want to live in that house anymore, and he still appeared hysterical the following day. Thirteen-year-old Doe Two repeatedly asked Steele if he was sure that he should be handling the gun, reasonably suggesting that he was afraid of the gun. And both Doe One and Doe Two also explicitly told the police in interviews the day after the incident that they were scared by Steele's actions.

The common understanding of the word "scared" means to experience some degree of distress, which is sufficient to constitute mental

suffering under the child endangerment statute. (§ 273a, subd. (a).) There was also substantial evidence that each child's fear or mental suffering was "unjustifiable" because Steele's actions with the handgun in the garage were plainly unwarranted under the circumstances. (See *People v. Thiel*, *supra*, 5 Cal.App.5th at p. 1208.) That is, there is no justifiable reason for a drunken adult to place two children in the position of experiencing the fear of losing their lives due to the possible discharge of a firearm.

Thus, we find sufficient evidence to support this first element of the child endangerment statute.

Steele argues Doe One merely "experienced being scared for a moment when the gun was allegedly pointed toward him." Steele further argues Mother's claim that Doe One "was 'hysterical' and crying the following morning strains credulity." And as to Doe Two, Steele argues his trial testimony should be believed, rather than his statements to the police the day after the incident in which he stated he was scared. We disagree.

All of Steele's arguments effectively encourage this court to disregard the highly deferential standard of review. It is, of course, the jury's role to make credibility determinations and to weigh the conflicting evidence. (See *People v. Bloom, supra,* 48 Cal.3d at p. 1208 ["The reviewing court presumes in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence"].)

In short, we cannot and will not disregard the standard of review. (See *People v. Thomas, supra,* 14 Cal.5th at p. 378 ["Reversal is not warranted 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction"""].) Again, substantial evidence supports the first element of child endangerment.

10

*2. There is substantial evidence Steele caused or permitted Doe One and Doe Two to suffer under circumstances or conditions likely to produce great bodily harm or death.*

"The phrase *likely to produce great bodily harm or death* means the probability of great bodily harm or death is high. [¶] *Great bodily harm* means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm." (CALCRIM No. 821.) Under section 273a, subdivision (a), the child need not actually suffer great bodily harm or death. (*People v. Cortes* (1999) 71 Cal.App.4th 62, 80.)

"It takes little to persuade us that a young child with access to a loaded gun is at substantial risk of serious physical harm." (*In re Yolanda L.* (2017) 7 Cal.App.5th 987, 995; see also *People v. Hansen* (1997) 59 Cal.App.4th 473, 479–480 ["Storing loaded firearms in a home occupied by children without denying the children access to the weapons creates a potential peril under the [child endangerment] statute"]; *People v. Odom* (1991) 226 Cal.App.3d 1028, 1031 [substantial evidence supported child endangerment conviction where children had access to loaded guns].)

Here, the evidence showed that Steele was drunk when he gave a handgun and ammunition to an 11-year-old boy and three teenage boys in a garage. There were no other adults present. Steele then encouraged the boys to load the firearm, and then watched and participated as Doe Two loaded the firearm and waived it about. Doe One and Doe Two, or any of the other children, or even Steele himself, could have been seriously injured or killed.

We find that the trial testimony plainly supports the jury's determination that Steele through his actions created "circumstances or conditions likely to produce great bodily harm or death." (§ 273a, subd. (a); see also *People v. Clark* (2011) 201 Cal.App.4th 235, 245 [determining

11

whether a child was placed under circumstances or conditions likely to produce great bodily harm or death "is a question for the trier of fact"].)

Thus, we find sufficient evidence to support this second element of the child endangerment statute.

Steele argues as to count one, the assault with a semiautomatic firearm charge, that the jury was required to find that the gun was loaded when Steele laughed and pointed it at Doe One. (See § 245, subd. (b).) Steele deduces that because the jurors found him guilty of the lesser included crime of assault, they must have determined that the gun was not loaded when he pointed it at Doe One. Steele argues: "Therefore, the act does not meet the element of 'causing the child to suffer under circumstances or conditions *likely* to produce great bodily harm or death.'" We disagree.

"An accusatory pleading may charge two or more different offenses connected together in their commission . . . . The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged, and each offense of which the defendant is convicted must be stated in the verdict . . . . *An acquittal of one or more counts shall not be deemed an acquittal of any other count.*" (§ 954, italics added.)

"The question of the validity of inconsistent verdicts usually arises when a jury renders two verdicts on two different counts which are contradictory. [Citation.] Understandably, in such cases defendants, like appellant here, take the position that the acquittal is the legally correct verdict while the conviction is not. This argument has been universally rejected because inconsistent verdicts [may be] the result of compromise in the jury room or of an extension of leniency or mercy to the defendant. [Citation.] In other words, if the conviction is supported by substantial

12

evidence, it is valid . . . ." (*People v. Pahl* (1991) 226 Cal.App.3d 1651, 1656.)

Thus, under long-standing precedent, the apparent inconsistency of the verdicts has no effect on our analysis. Moreover, the jurors did not have to agree on a particular act that Steele committed inside of the garage on the night of the incident, such as pointing the gun at Doe One; rather, the jurors could have made their determination based on Steele's entire course of conduct. (See *People v. Culuko, supra,* 78 Cal.App.4th at p. 325.) [3] Indeed, during his own testimony, Steele admitted that Doe Two waived the semiautomatic handgun around while the clip was in the weapon.

To reiterate and conclude as to this element, there is substantial evidence to support the jury's finding that Steele's acts caused Doe One and Doe Two to suffer under circumstances or conditions likely to produce great bodily harm or death as alleged in counts two and three.

*3. There is substantial evidence Steele acted with criminal negligence as to Doe One and Doe Two.*

Child abuse committed by indirect action on the part of the defendant requires proof of criminal negligence. (*People v. Valdez, supra,* 27 Cal.4th at p. 789.) Under a criminal negligence standard, "'defendant's conduct must amount to a reckless, gross, or culpable departure from the ordinary standard of due care; it must be such a departure from what would be conduct of an ordinarily prudent person under the same circumstances as to be incompatible with a proper regard for human life. . . . [¶] [M]ere inattention or mistake in judgment is insufficient to support a criminal

_____

[3] Steele does not claim that the trial court committed an instructional error.

13

conviction.'" (*People v. Lee* (1991) 234 Cal.App.3d 1214, 1221.)

"Criminal negligence may be found even when a defendant acts with a sincere good faith belief that his or her actions pose no risk. As long as the trier of fact determines that the defendant was *unreasonable* in that belief, the defendant's actual subjective belief is irrelevant." (*People v. Rippberger* (1991) 231 Cal.App.3d 1667, 1682.)

Here, Steele was stumbling, slurring his words, and smelled of alcohol. Steele went to his neighbor's garage and gave four children a handgun and a bag of bullets. Steele then encouraged the unsupervised boys to load the gun. Steele allowed the boys hold the gun while "waving it around," and "showing off." Steele caused the children to be in fear, and also placed them in circumstances likely to cause great bodily harm or death, as discussed in the prior two elements. In sum, the evidence plainly supports the jury's determination that Steele's actions were reckless and a gross departure from how any ordinary person exercising due care would behave. (See *People v. Lee*, *supra*, 234 Cal.App.3d at p. 1221.)

Thus, we find sufficient evidence to support this third element of the child endangerment statute.

As to this element, Steele again argues that if he "pointed the gun in [Doe One's] direction, it was unloaded at the time, as the jurors necessarily found by finding [him] not guilty of assault with a semiautomatic firearm, which requires that the weapon be loaded." But for reasons already discussed, the jury's not guilty verdict on the assault with a firearm charge has no bearing on our analysis as to the child endangerment charges. (See *People v. Pahl*, *supra*, 226 Cal.App.3d at p. 1656.)

Finally, Steele argues: "The People's failure to prove all elements of the charged offenses violated appellant's fifth and fourteenth amendment

14

rights to due process, a fair trial and a reliable verdict." (Capitalization & boldface omitted.)

But having found sufficient evidence to support all of the elements of the challenged child endangerment offenses, we need not address Steele's prejudice arguments. (See *People v. Sully* (1991) 53 Cal.3d 1195, 1219 ["no error occurred and no prejudice to defendant resulted"].)

## III.
## DISPOSITION

The judgment is affirmed.


MOORE, ACTING P. J.

WE CONCUR:


GOODING, J.


SCOTT, J.

15